[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10520
Non-Argument Calendar

_____

D.C. Docket No. 7:19-cr-00220-LSC-SGC-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LADARIUS MAURICE WATSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 21, 2021)

Before ROSENBAUM, ANDERSON, and ED CARNES, Circuit Judges.

PER CURIAM:

Ladarius Watson pleaded guilty to two counts of Hobbs Act robbery, in

violation of 18 U.S.C. § 1951(a), and two counts of brandishing a firearm during a

crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  He appeals his 180-

month sentence, which the district court imposed after reducing his guidelines range based on substantial assistance to authorities and then varying upward based on his participation in four other crimes for which he was facing state charges. Watson contends the court considered that participation "relevant conduct" under United States Sentencing Guidelines § 1B1.3, and he argues doing so was plain error because any participation was not during, in preparation for, or in the course of avoiding detection for his federal crimes.

I.

In late November 2017, Watson and two other men robbed a Tuscaloosa Quick Stop at gun point. Later that same night and two miles up the road, Watson and the others robbed a Subway sandwich shop at gun point. Watson brandished a rifle during both robberies.

Less than an hour later, police stopped a car carrying Watson and the two other men. A loaded rifle was on the seat next to Watson, and officers found objects and money stolen in the robberies inside the car. During a "show up" with victims and witnesses of the robberies, two people identified Watson as one of the Quick Stop robbers. Although Watson initially denied being involved, he later admitted to committing the Quick Stop and Subway robberies with the two other men (one of whom was the getaway driver).

Watson was charged with two counts of Hobbs Act robbery and two counts

2

of brandishing a firearm during a crime of violence, and he pleaded guilty to all four charges through a written plea agreement. In it, Watson agreed to testify against his codefendants and the government agreed to request a downward departure in the calculation of his guidelines sentence if he provided substantial assistance to authorities.

The presentence investigation report gave Watson's base offense level as 20 under U.S.S.G. § 2B3.1(a). The PSR then applied a two-level increase under U.S.S.G. § 3D1.4 as a multiple count adjustment and a three-level reduction under U.S.S.G. § 3E1.1(a)–(b) for acceptance of responsibility, giving him a total offense level of 19. Watson had zero criminal history points, which put him in criminal history category I. Based on a total offense level of 19 and a criminal history category of I, Watson's guidelines range for the two robberies was 30 to 37 months.

The two brandishing offenses carried statutory minimum sentences of 7 years each, which under 18 U.S.C. § 924(c)(1)(D)(ii) had to run consecutively to Watson's sentence for the robberies. As a result Watson's total guidelines range became 198 to 205 months. The statutory maximum sentences were 20 years for each of the robberies and life imprisonment for each of the brandishing offenses.

The PSR noted that Watson had six pending Alabama state charges. Two of those charges were related to the Hobbs Act robberies. The other four charges

related to three robberies and one burglary Watson was alleged to have committed against four separate convenience stores in November and December 2017. The PSR also noted that under U.S.S.G. § 5G1.3(c) Watson's sentence for his federal crimes should run concurrently with any anticipated but not yet imposed state sentence he later received for state offenses that were U.S.S.G. § 1B1.3 "relevant conduct."

Before sentencing, the government filed a memorandum that contained a motion to depart under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) based on Watson's substantial assistance to authorities. It recognized that the low end of his guidelines range was 198 months but recommended a 95-month sentence because he testified against the getaway driver at trial. Watson's own memorandum requested a sentence of 84 months.

At Watson's initial sentence hearing, the district court adopted the total guidelines range of 198 to 205 months. The court then asked for more detail about Watson's involvement in the robberies and burglary underlying the pending Alabama state charges. Watson asserted that he "had absolutely no involvement" in them, so the court postponed sentencing him until it could hear testimony from the officer who investigated those cases.

When the sentence hearing resumed, the district court began by clarifying that it had granted the government's motion for a downward departure "to the

4

extent that [the court] reduced the sentencing guideline range, as far as custody goes only, to 95 months." The court also explained that it had not sentenced Watson during the initial hearing because the court did not find it "appropriate for him to get a 95[-]month sentence," despite the government's recommendation, if he had "committed further armed robberies" after the Hobbs Act robberies in this case. Watson noted that he did "not need or want the government to put on any testimony," but he also did not want to admit to being guilty of the pending state charges, so the court heard from the investigating officer.

The officer testified about the four state charges that did not involve the Quick Stop and Subway robberies. About the first of those charges, the November 2017 armed robbery of a Tuscaloosa Buddy's Food Mart, the officer testified that Watson admitted his car was used in the robbery but claimed that he wasn't present for it; that video surveillance showed the robber wearing the same boots Watson had on when he was arrested; and that phone records showed Watson's cell phone was at the Buddy's Food Mart at the time of the robbery. About the second charge, the November 2017 armed burglary of a Chevron Swift Shop, the officer testified that video surveillance showed the burglar wearing a hat later recovered from Watson's car, which he said belonged to a friend but admitted he wore; that video surveillance showed the burglar wearing the same boots Watson was wearing when he was arrested; and that phone records put Watson's cell phone at

5

the Chevron Swift Shop during the burglary.

About the third charge, the December 2017 armed robbery of a Circle K, the officer testified that Watson admitted in a recorded interview to committing the robbery and to striking a victim with a handgun during it and that two co-conspirators identified him as one of the robbers. About the fourth charge, the December 2017 armed robbery of a Chevron gas station, the officer testified that: video surveillance showed Watson browsing inside the gas station for six minutes before leaving to get into a brown car; video surveillance showed three masked men then running from the brown car into the gas station to rob it; and officers later found the same brown car outside of Watson's apartment complex. The officer also testified that Watson admitted to being part of the planning of the Chevron robbery and two co-conspirators identified him as the person who picked the places to be robbed, helped plan the Chevron robbery, and "cased" the business for them before they went inside to rob it.

After the officer's testimony, Watson asked the court to sentence him to the government's recommended 95 months. But the court declined to do so, explaining:

> This is a horrendous crime. Not just because what he did in these particular ones he pled guilty to, but the court finds he actively participated [in] and committed the other robberies and the armed burglary that occurred. It is not reasonable or logical or equitable or fair for [Watson] to receive a 95 month sentence. The other defendant had not committed these other robberies that I sentenced to 95 months . . . .

6

The court reiterated that Watson "was facing 198 months at the low end of the guideline range" and added that, with the 7-year statutory minimums for the brandishing offenses and the 20-year statutory maximums for the robberies, Watson was facing a total of 54 years in prison. Reaffirming its intention to give Watson "the benefit of the downward departure based on his substantial assistance," the court stated that it was "not going [to] give him 54 years" or "648 months."

Instead the court sentenced Watson to 60 months on each count, with the two Hobbs Act robbery sentences running concurrently and the two brandishing sentences running consecutively, for a total of 180 months. The court described 180 months as "a good compromise" because "it's actually giving him 18 months less than the minimum or the low end of the guideline range." The court then further explained the reasoning behind its sentence:

> My obligation is to sentence the defendant to a sentence which is sufficient but not more than necessary to accomplish the sentencing goals set forth in the federal statutes, and I believe I have accomplished that with my sentence. In other words, he has gotten the benefit of substantial assistance, but yet also considering -- and I think was probably light based upon the other charges.
>
> And I assume he may very well get some extra time from the state court. He certainly deserves it. He has gone on an armed robbery spree and this is a menace to society. It ends up with people getting killed or hurt and it should not be stood [sic] in any sense of the word.

Watson did not object. The court then further clarified how it had arrived at

Watson's sentence, noting it had "varied down or, excuse me, departed down based on the 5K1 motion and then varied up based upon your relevant conduct, robberies, and such." The court also memorialized its decision to depart downward and then vary upward in its Statement of Reasons for Watson's sentence, which noted that the variance was based on several § 3553(a) considerations including Watson's role in the offense, his extreme conduct, his history and characteristics, and the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and adequately deter criminal conduct. Watson appealed his sentence.

## II.

We review only for plain error an asserted error raised for the first time on appeal. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Plain error review requires a defendant to demonstrate, among other things, an error occurred that was plain and affected his substantial rights. Id.

In calculating a defendant's guidelines range, a sentencing court must consider all "relevant conduct" attributable to him under U.S.S.G. § 1B1.3. See United States v. Maddox, 803 F.3d 1215, 1221 (11th Cir. 2015). Relevant conduct includes certain "acts or omissions" that "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3. But even

8

if conduct is not relevant under § 1B1.3, the court is "still entitled to consider" it "in deciding whether to vary outside the guideline range" when the conduct is "directly germane" to the 18 U.S.C. § 3553(a) factors.  See United States v. Overstreet, 713 F.3d 627, 637–38 (11th Cir. 2013).  "[T]he concept of 'relevant conduct' under U.S.S.G. § 1B1.3 pertains to determining the appropriate offense level, which is then used to calculate the guideline range. In contrast . . . [conduct] completely unrelated to [the] offense of conviction . . . may be considered as part of the defendant's 'history and characteristics' and other § 3553(a) factors and, thus, may be considered in imposing a variance."  Id. at 638 n.14.  Section 3553(a) requires the court to issue a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct.  See 18 U.S.C. § 3553(a).

## III.

Watson contends that the district court considered his pending Alabama state charges as relevant conduct under U.S.S.G. § 1B1.3.  He argues that doing so was plain error because those crimes were not part of the same pattern of misconduct as his federal crimes, were not committed during his federal crimes, and were not attempts to avoid detection for his federal crimes.  He argues the plain error affected his substantial rights because his similarly situated codefendant received a

95-month sentence while he received a 180-month sentence — "almost double" — based solely on the court's finding that his "relevant conduct, robberies, and such" warranted a harsher sentence.

The government contends that the court used the phrase "relevant conduct" "in a colloquial sense and not as the term of art defined in § 1B1.3" and that it considered Watson's state crimes only under § 3553(a). It notes Watson's sentence is well below the statutory maximum and also below the guidelines range that was originally in place before its substantial assistance motion. It argues that "§ 1B1.3 played no role in the district court's selection of Watson's sentence," so "there was no error, much less plain error."

The government is correct. The record makes clear that the district court did not consider the conduct underlying Watson's Alabama state charges when it determined his guidelines range, after granting the government's substantial assistance motion, was 95 months. The court considered that conduct only when it decided to vary upward from the guidelines range to a 180-month sentence, which we have held it has every right to do. See Overstreet, 713 F.3d at 637–38. The court explained how it used the details of Watson's state crimes at the sentence hearing, where it noted his "armed robbery spree" was "a menace to society" that could "end[] up with people getting killed or hurt," and again in its written statement of reasons, where it cited several § 3553(a) factors within which those

10

details fit.  The district court's choice of sentence, within Watson's guidelines range and well below his statutory maximum, was not error, plain or otherwise.

**AFFIRMED.**