[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12258

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DARRIN CHRISTOPHER WALLACE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cr-80027-RLR-1

_____

Before BRASHER, ABUDU, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, defendant Darrin Wallace appeals his 96-month sentence for possession of a firearm by a convicted felon. On appeal, Wallace argues that the district court erred by: (1) assigning a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) based on his prior Florida conviction for aggravated assault with a firearm being a crime of violence; (2) applying a four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense; and (3) denying his motion for a downward departure under U.S.S.G. § 4A1.3(b).

Because we lack jurisdiction to review the district court's denial of Wallace's downward-departure motion, we dismiss that part of his appeal. As to the district court's application of the two challenged guidelines enhancements, we find no error and affirm.

## I. BACKGROUND FACTS

### A.    Offense Conduct

Wallace does not dispute these facts. In 2019, Wallace was convicted in a Florida state court of felony aggravated assault with a firearm. As a convicted felon, Wallace was prohibited from possessing a firearm and ammunition.

In November 2021, police received a 911 call reporting that Wallace was outside the caller's residence, had a firearm, and was

having a dispute with his uncle, A.W., and A.W.'s girlfriend, W.U. During the 911 call, Wallace discharged three rounds.

As officers arrived, they saw Wallace driving away in A.W.'s car. As Wallace fled, he drove toward one marked patrol car, forcing it off the road, and rammed the back of the patrol car. Wallace then led police on a high-speed chase at over 100 miles per hour, before crashing his car. Officers immediately detained Wallace at the accident scene and found a firearm on the front passenger floorboard of his car. The firearm, a semi-automatic pistol, had a magazine with a thirty-round capacity and was loaded with sixteen rounds.

An officer interviewed the victims, A.W. and W.U., who confirmed that the incident stemmed from a dispute over $15,000. While the three were riding in A.W.'s car, Wallace pulled out the firearm and demanded the money. A.W. drove to the residence to get the money, leaving W.U. in the car with Wallace.

While they waited, Wallace made W.U. open the trunk of the car to look for money. Wallace placed the firearm to the side of W.U.'s head and told her if A.W. did not return he would kill her. Wallace demanded that W.U. give him her cell phone so she could not call 911. Eventually, W.U. went to the front door of the residence and laid down. Soon after, Wallace shot the passenger side of the car and then took the car and fled. Crime scene investigators found three shell casings where A.W.'s car had been parked at the residence and three suspected bullet defects on the passenger side of A.W.'s car.

Based on this incident, Wallace was arrested and charged in Florida state court with multiple offenses, including robbery with a firearm; shooting into a building; grand theft of a motor vehicle while in possession of a firearm; fleeing or attempting to elude police at reckless high speed; tampering with a witness, victim, or informant; and aggravated assault with a firearm. When Wallace was indicted in federal court, the state charges were dropped.

## B.    Conviction and Sentence

In March 2022, a federal grand jury returned a single-count indictment charging Wallace with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Wallace pled guilty pursuant to a written plea agreement.

Wallace's presentence investigation report ("PSI") assigned a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) because his offense involved a semi-automatic firearm capable of accepting a large capacity magazine and he had committed the offense after sustaining a conviction for a crime of violence, namely his 2019 Florida felony conviction for aggravated assault with a firearm. The PSI increased Wallace's offense level: (1) by four levels under § 2K2.1(b)(6)(B) because he possessed a firearm in connection with a felony offense, specifically the state charges that were later dropped;[1] and (2) by two levels under § 3C1.2 because Wallace recklessly created a substantial risk of death or serious bodily injury

---

[1] The PSI identified U.S.S.G. § 2K1.1(b)(6)(B), but that is clearly a typographical error, as § 2K2.1(b)(6)(B) is the relevant guideline provision.

to another person when he led police on the high-speed chase. After a three-level reduction for acceptance of responsibility under § 3E1.1, the PSI arrived at a total offense level of 25.

The PSI assigned 13 criminal history points based on eight prior convictions in Wallace's criminal history, which resulted in a criminal history category of VI. Wallace's initial guidelines range was 110 to 137 months. Because the statutory maximum sentence was 120 months, the PSI noted that the advisory guidelines range became 110 to 120 months pursuant to § 5G1.1(c)(1).

In his written objections and at sentencing, Wallace objected, *inter alia*, to an enhanced base offense level of 22 under § 2K2.1(a)(3). Citing *Borden v. United States*, 593 U.S. ----,141 S. Ct. 1817 (2021), Wallace argued that his prior Florida conviction for aggravated assault did not constitute a crime of violence because that offense could be committed recklessly. Wallace observed that this Court had certified questions to the Florida Supreme Court on the issue. The district court overruled the objection, relying on this Court's pre-*Borden* precedent in *United States v. Golden*, 854 F.3d 1256 (11th Cir. 2017), which held that a Florida conviction for aggravated assault constituted a crime of violence for purposes of § 2K2.1.

Wallace also objected to the four-level increase under § 2K2.1(b)(6)(B) because the state felony offenses listed in the PSI "were all dropped" and using them to increase his base offense level would violate his Fifth and Sixth Amendment rights. Wallace's counsel acknowledged he had found no case law to support this

position.  Wallace also acknowledged that the commentary to § 2K2.1 provided that the other felony offense qualified "regardless of whether a criminal charge was brought, or a conviction obtained."  *See* U.S.S.G. § 2K2.1 cmt. n.14(C).  But he maintained the commentary was not binding because it violated "the [c]onstitutional prohibition against increasing a penalty without a jury finding of guilty on the elements of the crime."

The district court overruled this objection too, finding "the four-point enhancement is appropriate under the facts as set forth in the PSI."  The district court found that the total offense level was 25, the criminal history category was VI, and the advisory guidelines range was 110 to 120 months.

Prior to sentencing, Wallace moved for a downward departure under U.S.S.G. § 4A1.3(b) or for a downward variance, contending that a criminal history category of VI significantly overrepresented the seriousness of his criminal record.  Wallace pointed out that some of the convictions for which he received criminal history points were "relatively minor traffic [offenses] and/or misdemeanors" not typically associated with Category VI offenders.  At sentencing, Wallace asked for a reduced criminal history category of IV.

The government opposed the motion, noting that Wallace did not receive any criminal history points for many other offenses, and he had amassed an extensive criminal history by his early twenties, which showed a pattern of disregard for the law and an escalation in seriousness over time.

The district court allowed Wallace to allocute and listened to the parties' arguments as to the aggravating and mitigating circumstances that should determine the appropriate sentence. In considering the 18 U.S.C. § 3553(a) sentencing factors, the district court noted, among many other things, Wallace's extensive criminal history over a relatively short life, which the court noted was "what [was] driving the Guidelines so high." The district court also agreed with the government's argument that Wallace's criminal history was serious and that he needed to be deterred to protect the public. The district court stated that it would "give a slight variance" to, among other things, ensure Wallace was treated similarly to other § 922(g) defendants the court had sentenced, including an individual "who also had an offense level of 25 and a criminal history VI." Stating that it was "granting in part the motion for downward variance," the district court imposed a 96-month sentence, followed by three years of supervised release.

After objecting to the reasonableness of the sentence, defense counsel asked whether the "downward departure variance [was] on the basis that the criminal history over state[d] the seriousness." The district court responded that the sentence was based on the totality of the circumstances, "a combination of everything" rather than "any one particular factor" and "not premised on an explicit finding of an over statement." The district court assured Wallace it had considered all his arguments, including his background and personal history.

## II. DISCUSSION

### A.    Enhanced    Base    Offense    Level    Under    U.S.S.G. § 2K2.1(a)(3)

Section 2K2.1(a) provides for a base offense level of 22 if the defendant committed the instant offense after sustaining one felony conviction for a "crime of violence." U.S.S.G. § 2K2.1(a)(3). Section 2K2.1 cross-references § 4B1.2(a) for the definition of "crime of violence," which includes an elements clause. *Id.* cmt. n.1. That is, § 4B1.2(a) defines a crime of violence as any federal or state offense punishable by more than one year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).[2]

After Wallace filed his opening brief, this Court issued *Somers v. United States*, 66 F.4th 890 (11th Cir. 2023). In *Somers*, this Court received responses to certified questions from the Supreme Court of Florida indicating that Florida aggravated assault cannot be committed recklessly. 66 F.4th at 894-96. Accordingly, the *Somers* Court reaffirmed that Florida aggravated assault categorically qualifies as a violent felony under the Armed Career Criminal Act's ("ACCA") elements clause. *Id.* at 896.

---

[2] We review *de novo* whether a prior conviction qualifies as a crime of violence under the Sentencing Guidelines. *United States v. Palomino Garcia*, 606 F.3d 1317, 1326 (11th Cir. 2010).

22-12258                Opinion of the Court                9

As Wallace concedes in his reply brief, *Somers* forecloses his challenge to the government's use of his Florida aggravated assault conviction as a predicate crime of violence under U.S.S.G. § 2K2.1(a)(3). Indeed, Wallace now states his base offense level was properly calculated, and we agree. While *Somers* addressed whether Florida aggravated assault is a violent felony under the ACCA's elements clause, its reasoning applies equally here to the elements clause in § 4B1.2(a)(1). *See United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019) (explaining that this Court looks to decisions applying the ACCA for guidance in whether an offense qualifies as a crime of violence under the guidelines, and vice versa, because the two elements clauses are "virtually identical"). In light of *Somers*, we readily conclude that Wallace's Florida conviction for aggravated assault also categorically qualifies as a crime of violence under the elements clause in § 4B1.2(a)(1).

## B.    Four-Level Increase Under U.S.S.G. § 2K2.1(b)(6)(B)

Section 2K2.1(b)(6)(B) provides for a four-level increase in the offense level if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The commentary to § 2K2.1 defines "another felony offense" for purposes of § 2K2.1(b)(6)(B) as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought, or a conviction obtained.*" *Id.* cmt. n.14(c) (emphasis added).

Once a defendant objects, the government bears the burden to prove the facts supporting a sentencing enhancement by a preponderance of the evidence. *United States v. Grady*, 18 F.4th 1275, 1291-92 (11th Cir. 2021). It is well settled that sentencing courts may consider conduct for which a defendant has been acquitted if the government proves that conduct by a preponderance of the evidence and the enhancement results in a sentence below the maximum statutory penalty authorized by the jury's verdict. *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015); *United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir. 2005) (holding that after *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court applying the Sentencing Guidelines in an advisory manner can consider acquitted conduct when determining a sentence without violating the Sixth Amendment "as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict").

Wallace does not challenge the district court's finding that the undisputed facts in the PSI supported the four-level increase. Instead, Wallace argues that the four-level increase violated the Sixth Amendment because it was based on his dismissed state felony charges that "w[ere] not proven to a jury." Wallace acknowledges that the commentary to § 2K2.1 allows uncharged conduct to support the enhancement, but argues the commentary is not binding where it violates the Constitution.[3] He also

---

[3] We decline to address Wallace's argument—raised for the first time in his reply brief—that the commentary's definition of "another felony offense"

acknowledges our well-settled precedent to the contrary but asks us to "reconsider the issue."[4]

Wallace's 96-month sentence was below the ten-year statutory maximum applicable to his offense of conviction. *See* 18 U.S.C. § 924(a)(2) (2015).[5] Thus, under this Court's well-settled precedent, the district court's reliance on Wallace's dismissed state charges to support the four-level increase in his offense level did not violate Wallace's Sixth Amendment rights. Under our prior panel precedent rule, we are bound by this precedent and cannot "reconsider" it, as Wallace suggests. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc.").

## C.    Motion for Downward Departure Under U.S.S.G. § 4A1.3(b)

A district court may depart downward from the guidelines range when reliable information suggests that a defendant's criminal history category substantially over-represents the

---

contradicts the plain text of § 2K2.1(b)(6)(B). *See United States v. Campbell*, 26 F.4th 860, 870-873 (11th Cir.) (en banc), *cert. denied*, 143 S. Ct. 95 (2022).

[4] We review both the district court's interpretation and application of the Sentencing Guidelines and any constitutional challenges to a sentence *de novo*. *Maddox*, 803 F.3d at 1220.

[5] Section 924 has since been amended, and the statutory maximum is now fifteen years. *See* 18 U.S.C. § 924(a)(2).

seriousness of the defendant's criminal history or the likelihood that the defendant will reoffend. U.S.S.G. § 4A1.3(b). On appeal, Wallace argues that the district court should have granted his motion for a downward departure because many of his scored prior convictions were "minor in nature."

We lack jurisdiction to review the denial of a motion for downward departure "unless the district court incorrectly believed that it lacked the authority to depart from the guidelines range." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). "[W]hen nothing in the record indicates otherwise, we assume the sentencing court understood it had authority to depart downward." *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) (quotation marks omitted).

We agree with the government that we lack jurisdiction to review Wallace's challenge to the denial of his departure motion. Nothing in the record indicates the district court believed it lacked authority to depart downward from the advisory guidelines range under § 4A1.3(b).

We find no merit to Wallace's argument that this Court was "not divested of jurisdiction" because the district court "never specifically ruled on" his requested departure. While the district court did not explicitly state that Wallace's departure request was denied, the district court's statements during the record as a whole leave us with no doubt that it in fact denied the request and left Wallace's criminal history category at category VI, as originally calculated in the PSI.

For example, the district court observed that Wallace's extensive criminal history was what drove the advisory guidelines range (110 to 120 months) so high and agreed with the government's position that this was appropriate given the seriousness of his criminal history and the need to protect the public.  The district court also reiterated that Wallace had a criminal history category of VI when it explained its decision to give a downward variance (14 months) to ensure Wallace's sentence was not disparate to similarly situated defendants.  The district court stated that it was "granting in part" Wallace's motion, which was styled as a motion for *both* a downward departure and a downward variance.  Finally, after imposing the sentence, the district court clarified that the chosen sentence was based on the totality of the circumstances and not on "an explicit finding of an over statement" of Wallace's criminal history.

In short, the transcript makes clear that the district court denied the part of Wallace's motion that sought a downward departure under § 4A1.3(b) but granted the part that sought a downward variance.  Accordingly, we do not have jurisdiction to review the district court's denial of the departure motion.[6]

---

[6] To the extent Wallace's reply brief argues—for the first time on appeal—that the district court's decision to impose only a 14-month downward variance was substantively unreasonable, we do not address that issue.  *See Campbell*, 26 F.4th at 870.

### III.  CONCLUSION

For the reasons given, we dismiss for lack of jurisdiction Wallace's appeal of the denial of his motion for a downward departure.  We find no error in the district court's calculation of Wallace's offense level using both § 2K2.1(a)(3) and (b)(6)(B) and affirm Wallace's 96-month sentence.

**AFFIRMED IN PART, DISMISSED IN PART.**