[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11563

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHRISTOPHER DIAZ,
a.k.a. Chico,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00385-KKM-SPF-2

_____

Before GRANT, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Christopher Diaz appeals his 96-month total sentence for aiding and abetting the armed robbery of a United States mail carrier and the theft of a postal key. Diaz challenges the application of three Sentencing Guidelines offense-level enhancements, the government's refusal to move for a one-level reduction pursuant to U.S.S.G. § 3E1.1(b), and the substantive reasonableness of his sentence. We affirm.

**I.**

Diaz entered a guilty plea to aiding and abetting a codefendant, Omar Miller, Jr., in the robbery of a United States mail carrier and putting the mail carrier's life in jeopardy by the use of a firearm during the robbery, in violation of 18 U.S.C. §§ 2114(a) and 2; and aiding and abetting the theft of a postal key, in violation of 18 U.S.C. §§ 1704 and 2. According to undisputed facts in the presentence investigation report, Diaz reached out over social media to find someone willing to rob a mail carrier, eventually contacting Betancourt Vega. Diaz communicated with Vega through phone calls and text messages, offering him money to commit the robbery, identifying a possible mail carrier and apartment complex to target, sending him photographs of a mail truck with a time stamp and a note saying "no cameras," notifying him where cameras

might be located, giving him instructions on how to gain access to different mailboxes, and telling him where to go after the robbery.

Vega recruited Miller to participate in the robbery. On the day of the robbery, Miller approached United States Postal Service mail carrier M.J. while she was delivering mail at an apartment complex in Tampa. Miller, who was wearing a ski mask and carrying a handgun, demanded M.J.'s "arrow key," a universal device that can unlock several different types of mailboxes owned by the Postal Service. During the robbery, Miller racked the firearm and held it against M.J., and he told her that if she screamed, he would shoot her. He then directed her to the ground and pushed her face down before fleeing on foot and later getting into a car driven by Vega.

Police identified the getaway car through surveillance video. They conducted a traffic stop of the vehicle and identified Vega as the driver and Miller as the passenger. A search of Vega's cell phone revealed Diaz's text messages with Vega and eventually led to Diaz's arrest.

At sentencing, the district court increased Diaz's Sentencing Guidelines base offense level as follows: two levels because the property of a post office was taken, U.S.S.G. § 2B3.1(b)(1); six levels because a firearm was used in the commission of the offense, U.S.S.G. § 2B3.1(b)(2)(B); two levels because a person was physically restrained to facilitate the commission of the offense, § 2B3.1(b)(4)(B); and two levels due to Diaz's role as a leader or organizer, U.S.S.G. § 3B1.1(c). The district court reduced the total

by two levels for Diaz's acceptance of responsibility.  *See* U.S.S.G. § 3E1.1(a).  Based on the resulting offense level (30) and Diaz's criminal history category (II), the district court calculated a Guidelines range of 108 to 135 months in prison.  After hearing argument from the parties and allocution from Diaz, the district court sentenced Diaz to 96 months in prison followed by three years of supervised release.

In this appeal, Diaz argues that the district court erred in applying three of the offense-level enhancements when calculating his Guidelines range, and that the government acted in bad faith when it refused to move for an additional one-level reduction for providing timely notice of his intention to plead guilty.  He also argues that his sentence is substantively unreasonable.

## II.

When evaluating Sentencing Guidelines calculations, we review the district court's factual findings for clear error and "its application of those facts to justify a sentencing enhancement" de novo.  *United States v. Ware*, 69 F.4th 830, 854 (11th Cir. 2023) (quotation omitted).  A district court's enhancement of a defendant's offense level based on his role as an organizer or leader is a finding of fact that we review for clear error.  *United States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002).  We consider the substantive reasonableness of a sentence under a deferential abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

### III.

We begin by considering Diaz's objections to three Guidelines offense-level enhancements: the six-level enhancement for use of a firearm, the two-level enhancement for physical restraint of a person to facilitate the commission of the offense, and the two-level enhancement for Diaz's role as a leader or organizer.

### A.

Diaz argues that the district court erred in applying a firearm enhancement because he had no possession or control over the firearm, did not provide it or direct its use, and had no knowledge of its intended use. Section 2B3.1 of the United States Sentencing Guidelines calls for a five-level enhancement if a firearm was "brandished or possessed," and a six-level enhancement if a firearm was "otherwise used." U.S.S.G. § 2B3.1(b)(2)(B)–(C). In determining whether to apply a Guidelines enhancement, "a district court must consider all relevant conduct attributable to the defendant." *United States v. Maddox*, 803 F.3d 1215, 1221 (11th Cir. 2015). "Relevant conduct" includes all acts aided or abetted by the defendant. U.S.S.G. § 1B1.3(a)(1)(A). The district court may rely on the facts stated in the defendant's presentence investigation report if the defendant does not clearly and specifically object to them. *United States v. Dubois*, 94 F.4th 1284, 1302 (11th Cir. 2024).

Here, the district court did not err in applying the six-level enhancement under U.S.S.G. § 2B3.1(b)(2)(B). Diaz pleaded guilty to aiding and abetting Miller in the commission of the robbery, and

according to the undisputed facts, Miller "otherwise used" a firearm by racking the gun and holding it to the victim.

**B.**

A two-level sentencing enhancement applies for robberies where "any person was physically restrained to facilitate commission of the offense." U.S.S.G. § 2B3.1(b)(4)(B). Guidelines commentary defines physical restraint as "the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1, comment. (n.1(L)). Our precedent "clearly indicates that when an armed robber uses the threat of deadly force with his firearm to compel a victim to move or to stay in place, the enhancement applies." *Ware,* 69 F.4th at 854.

In the face of this precedent, Diaz points to cases from other circuits requiring the use of physical force to apply the enhancement. We have rejected similar arguments before, and we reject them again here. *Id.* at 855. We are bound by our own precedent, which cannot be overridden by contrary opinions of other courts. *Id.*; *see United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008). By threatening to shoot the victim and then forcing her to the ground at gunpoint and pushing her face down, Miller used the threat of deadly force to compel the victim to move and then to stay down. Diaz was subject to the enhancement based on Miller's conduct because he aided and abetted that conduct. *See* U.S.S.G. § 1B1.3(a)(1)(A). The district court did not err in applying a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B).

## C.

Under the Sentencing Guidelines, a defendant receives a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). In determining the applicability of this enhancement, courts consider the defendant's: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." *United States v. Ramirez,* 426 F.3d 1344, 1355 (11th Cir. 2005) (quotations omitted); *see* U.S.S.G. § 3B1.1 comment. (n.4). The defendant need not be the sole leader of the conspiracy in order to receive the enhancement. *United States v. Vallejo,* 297 F.3d 1154, 1169 (11th Cir. 2002). And "the assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." *United States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000).

The district court here did not clearly err in applying a two-level enhancement under U.S.S.G. § 3B1.1(c). Diaz recruited Vega for the purpose of committing the robbery, instructed him to steal a particular kind of postal key, advised him of a potential target, provided camera locations, and told him where to take the key after the completion of the robbery. Given this recruitment, planning, and direction, the district court did not clearly err in finding that Diaz was a leader or organizer of the robbery scheme. *See Ramirez,* 426 F.3d at 1355; *Jiminez,* 224 F.3d at 1251. Vega's

potential status as a second organizer or leader does not make the court's application of the enhancement to Diaz clear error. *See Vallejo,* 297 F.3d at 1169.

## IV.

We turn next to Diaz's argument that the government did not act in good faith in failing to move for a reduction in his offense level under § 3E1.1(b) of the Sentencing Guidelines. That section instructs the sentencing court to reduce the defendant's offense level by one level if the defendant qualifies for a reduction under § 3E1.1(a) for accepting responsibility for his offense *and* the government makes a motion stating that the defendant has assisted authorities by timely notifying them "of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G § 3E1.1(b).

At Diaz's sentencing, the district court found that Diaz qualified for a two-level reduction under § 3E1.1(a) for acceptance of responsibility, but the government refused to make a motion for an additional one-level reduction under § 3E1.1(b). The prosecutor explained that Diaz had pleaded guilty less than two weeks before the scheduled trial date, causing the government to spend time and resources preparing the case for trial. Diaz objected, arguing that he had notified the government that he intended to plead guilty at least 90 days before the scheduled trial date, if only informally. But Diaz did not ask the district court for any relief; to the contrary, when the district court expressed doubt that it could act on the

objection, Diaz's counsel appeared to agree, stating that the court could not force the government to file a motion.

Diaz's argument on appeal is unclear. He contends that the government's true motive for not filing a § 3E1.1(b) motion was that he would not testify for the government at Miller's trial, but he does not identify any error by the district court in relation to the government's refusal. To the extent his briefing can be construed as arguing that the district court erred by not requiring the government to file a motion for the additional one-level reduction, his argument is barred by the invited error doctrine. That doctrine "precludes appellate review of an argument that a party expressly disclaimed before the district court." *United States v. Boone*, 97 F.4th 1331, 1339 (11th Cir. 2024) (quotation omitted).

In any event, the government adequately explained its refusal to move for a § 3E1.1(b) offense-level reduction. The prosecutor pointed out that the government had been forced to expend time and resources preparing for trial because Diaz had not entered a guilty plea until 13 days before the scheduled trial date. Diaz's counsel stated that she had notified the government months earlier that he would plead guilty, but she also acknowledged that she herself had prepared for trial because she was unable to communicate with Diaz until he arrived in the district from out of state shortly before the trial date. Not surprisingly, the record indicates that the government also prepared for trial, including drafting and filing proposed jury instructions, verdict forms, and *voir dire* questions. Because defense counsel evidently was unable to confirm Diaz's

intention to plead guilty in time to "permit[] the government to avoid preparing for trial" and to allocate its resources efficiently, the district court was not required to compel the government to move for the additional one-level reduction—even assuming that it had the power to do so.  U.S.S.G § 3E1.1(b).

## V.

Last, we consider Diaz's argument that his sentence is substantively unreasonable.  A sentence may be substantively unreasonable if the district court "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted).  The party challenging the sentence bears the burden of showing that it is unreasonable.  *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).  We will vacate a defendant's sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1191 (quotation omitted).

We are not left with that conviction here.  Contrary to Diaz's argument, the district court specifically referenced Diaz's mental health and substance abuse issues when considering his history and characteristics under § 3553(a).  The court also considered Diaz's sentencing memorandum, the presentence investigation report—

which contained extensive information about his background, including his drug use and mental health history—and Diaz's argument and allocution at the sentencing hearing. The court did not consider any improper or irrelevant factors. It considered and properly applied the § 3553(a) sentencing factors, including Diaz's history and characteristics, the nature, circumstances, and seriousness of the offense, the need for deterrence, the need to protect the public, and the need to avoid unwarranted sentencing disparities "among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(1)–(2), § 3553(a)(6).

As the district court explained, no unwarranted sentencing disparity exists between Diaz's 96-month sentence and the sentences imposed on Vega (51 months) and Miller (26 months for the charges Diaz faced, plus a consecutive 84-month sentence for an additional firearm charge). That is because Vega and Miller were not similarly situated to Diaz. *See id.* § 3553(a)(6); *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (a well-founded sentencing disparity claim "assumes that apples are being compared to apples" (quotation omitted)). Vega received a reduced sentence based in part on his substantial cooperation with the government; his shorter sentence could not create an "unwarranted" disparity with Diaz's because Diaz did not cooperate. *See Docampo*, 573 F.3d at 1101. And Miller, who received a total sentence of 110 months, had no criminal history, whereas Diaz had a significant history of criminal convictions as well as a new firearm charge based on his conduct while on pretrial release.

The district court appropriately accounted for Diaz's personal history, his relative culpability, the need for specific deterrence in light of Diaz's continuing criminal conduct after his arrest, and the need for general deterrence given the increase in local mail-carrier robberies. The 96-month sentence was significantly lower than the Guidelines range of 108–135 months, and far below the statutory maximum sentence of 300 months on count one of the indictment and 120 months on count two. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008); *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014). Under the circumstances, Diaz's sentence was well within "the range of reasonable sentences dictated by the facts of the case." *Pugh*, 515 F.3d at 1191.

## VI.

The district court did not err or clearly err in calculating Diaz's Guidelines range, and its sentence of 96 months in prison followed by three years of supervised release was reasonable. We therefore affirm.

**AFFIRMED.**