# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2020
_____

United States of America

*Plaintiff - Appellee*

v.

Dimaryn Raishawn Ware, also known as Mari

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: May 16, 2025
Filed: June 30, 2025

_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Dimaryn Ware was indicted on several counts of firearms-related charges. He moved to dismiss the indictment, arguing that the charged statutes violated the Second Amendment on their face and as applied to him. The district court[1] denied

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

his motion to dismiss, and Ware pled guilty but preserved his right to appeal that denial. He now does so, along with several of the court's sentencing decisions. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Together with Ana Royce and Alex Simon Jr., Ware conspired to obtain firearms for himself and Simon, both of whom could not lawfully possess such weapons, with Royce purchasing guns on two occasions. First, on November 25, 2022, Royce purchased a Taurus 9mm pistol for Simon and a Glock Model 19 9mm pistol for Ware; then, on December 9, she purchased a Glock Model G20 10mm pistol for Ware. Four days before the first purchase, all three participants visited a shooting range, where video footage showed Simon firing a Glock-style pistol with an extended magazine. On November 26, one day after the first purchase, Royce and Simon took pictures of themselves holding the Taurus 9mm with an extended magazine.

That same day, Ware was involved in a shooting in Des Moines, Iowa. He used the Glock 19 from the November 25 purchase, and he was eventually charged with attempted murder, in violation of Iowa Code § 707.11(1). Although acquitted of that primary charge, Ware was found guilty of various other offenses, including: three counts of assault with intent to inflict serious injury, in violation of Iowa Code § 708.2(1); one count of intimidation with a dangerous weapon with intent to injure or provoke fear, in violation of Iowa Code § 708.6(1); one count of willful injury causing bodily injury, in violation of Iowa Code § 708.4(2); and one count of being a felon in possession of a firearm, in violation of Iowa Code § 724.26(1). Police eventually recovered the Glock 19, and the gun was fitted with an extended magazine.

Eventually, Ware was named in a multicount indictment along with Royce and Simon. Count 3, charging Ware with participating in a straw-purchasing conspiracy under 18 U.S.C. § 932(b)(1), and Count 4, charging Ware with being a

felon in possession of a firearm under 18 U.S.C. § 922(g)(1), arose from the November 25 purchase. Counts 8 and 9, which arose from the December 9 purchase, included those same two charges. Ware moved to dismiss the indictment, arguing that both statutes violated the Second Amendment on their face and as applied to him. The district court denied the motion, and Ware subsequently pled guilty to Counts 4 and 8, preserving his right to appeal that denial, while Counts 3 and 9 were dismissed on the motion of the Government.

At sentencing, over Ware's objection, the court applied the Base Offense Level from United States Sentencing Guideline (USSG) § 2K2.1(a)(3). The district court concluded that the offense involved a firearm capable of accepting a large capacity magazine based on the videos and pictures of Royce and Simon possessing and using such a firearm and based on the fact that the Glock 19 was fitted with such a magazine when it was ultimately recovered. After calculating a Guidelines range of 84 to 105 months, the court varied upward to 144 months' imprisonment after considering Ware's role in the November 26 shooting. The district court ordered its sentence to run concurrently to the state sentence for the November 26 shooting, but consecutively to Ware's state sentences for an unrelated shooting from March 2020 and for an escape from state custody, the latter of which was still pending. Ware now appeals.

II.

Ware first argues that the district court erred when it denied his motion to dismiss the indictment, but his arguments in support of his motion to dismiss are foreclosed by precedent. Section 922(g)(1) is not unconstitutional on its face or as applied to him. See United States v. Jackson, 110 F.4th 1120, 1125 (8th Cir. 2024) (reviewing argument de novo, holding that § 922(g)(1) is consistent with our nation's history and tradition of firearm regulation, and concluding that "there is no need for felony-by-felony litigation regarding the constitutionality of [the felon-in-possession statute]"), cert. denied, 2025 WL 1426707 (May 19, 2025). Because his straw-purchasing-conspiracy conviction rests on his felon-in-possession conviction,

his Second Amendment challenge to § 932(b)(1) is similarly foreclosed. See United States v. Sharkey, 131 F.4th 621, 622 (8th Cir. 2025) (rejecting an identical argument).

### III.

Ware next asserts that the district court erred when it considered conduct underlying the state attempted murder charge for which Ware was acquitted. This claim is also foreclosed by precedent. District courts can consider "conduct underlying the acquitted charge" without offending the Fifth or Sixth Amendments, see id. at 623; United States v. Bullock, 35 F.4th 666, 671 (8th Cir. 2022), and, assuming his conduct even qualified,[2] the district court was not required to consider then-pending Guidelines amendments which would prohibit using acquitted conduct when calculating a Guidelines range, see Sharkey, 131 F.4th at 623. To the extent he argues that his sentence is substantively unreasonable because the district court considered that purportedly acquitted conduct, we have rejected that argument, too. See id. at 624.

### IV.

The district court applied USSG § 2K2.1(a)(3) to calculate Ware's Base Offense Level because the court concluded that Ware's offense involved a

---

[2]Under the then-pending amendment to USSG § 1B1.3(c), "conduct for which the defendant was criminally charged and acquitted in federal court" would not qualify as "relevant conduct" for the purposes of calculating a defendant's advisory Guidelines range unless that conduct also establishes the offense of conviction. But as the Government notes, the amendment would not apply to Ware even if it were in force at the time of his sentencing. First, although Ware was not found guilty of attempted murder, he *was* found guilty on the six other counts; second, the Guideline excludes conduct underlying only federal acquittals from the definition of relevant conduct, not state acquittals, see id.; and third, the Guideline does not prohibit a court from considering acquitted conduct when analyzing the factors from § 3553(a), as the district court did here.

semiautomatic firearm "capable of accepting a large capacity magazine."[3] On appeal, Ware argues that the district court clearly erred in applying that enhancement. See United States v. Byas, 581 F.3d 723, 725 (8th Cir. 2009) (reviewing district court's factual findings for clear error).

Under the Guidelines, Ware's "offense" includes the offense itself and "all relevant conduct under § 1B1.3." USSG § 1B1.1, comment (n.1(I)). "Relevant conduct," in turn, includes the defendant's "acts and omissions . . . that occurred during the commission of the offense of conviction [or] in preparation for that offense," and "in the case of a jointly undertaken criminal activity," acts of others "within the scope," "in furtherance of," and "reasonably foreseeable in connection with" that activity. Id. § 1B1.3(a)(1). The Guidelines likewise define a "semiautomatic firearm that is capable of accepting a large capacity magazine" as one with "the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm." Id. § 2K2.1 comment. (n.2).

Applying those definitions here, we see no clear error in the district court's conclusions. During the course of the straw-purchasing conspiracy, Ware and his co-conspirators visited a shooting range, where one co-conspirator fired a pistol with an extended magazine. Another co-conspirator told investigators that Ware "always had his gun on him" and described the gun as "black with a long magazine sticking out of it." When the firearm that Ware received through the conspiracy was recovered—although not in Ware's possession—it was fitted with a large capacity magazine, which demonstrates that it was physically capable of accepting such a magazine. The district court did not clearly err in concluding that all of Ware's actions, as well as those of his co-conspirators, were "relevant conduct" under USSG

---

[3]On appeal, Ware does not challenge § 2K2.1(a)(3)'s other requirement: "commit[ing] any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."

§ 1B1.3(a)(1), see United States v. Adams, 451 F.3d 471, 473 (8th Cir. 2006), nor did it clearly err in concluding that at least one firearm in the straw-purchasing conspiracy was "capable of accepting a large-capacity magazine," regardless of whether there was any direct evidence that Ware physically possessed such a firearm, see Byas, 581 F.3d at 725-26 (permitting § 2K2.1(a) enhancement based on "circumstantial evidence" that a defendant either "actually or constructively possessed" the firearm); see also United States v. Carruth, 439 F. App'x 560, 562 (8th Cir. 2011) (per curiam) (applying enhancement based on purchase of weapon and magazine, even though weapon was found later and did not have large capacity magazine). Accordingly, the district court did not clearly err in applying USSG § 2K2.1(a)(3).

V.

Finally, the district court ordered Ware's sentence to run consecutively to two state prison sentences: one for an unrelated shooting in March 2020 and one for escaping while on parole. The district court further refused to reduce Ware's federal sentence by the time Ware served under those state sentences pursuant to USSG § 5G1.3(b), which mandates a reduction "for any period of imprisonment already served" on a "term of imprisonment [which] resulted from another offense that is relevant conduct to the instant offense." Ware challenges both of these decisions on appeal. Both challenges fail.

Courts have discretion to impose consecutive terms of imprisonment for "a defendant who is already subject to an undischarged term of imprisonment." 18 U.S.C. § 3584(a); see United States v. Benson, 888 F.3d 1017, 1019 (8th Cir. 2018); United States v. McDonald, 521 F.3d 975, 980 (8th Cir. 2008). That discretion extends to not only federal sentences, but undischarged state sentences as well. See Setser v. United States, 566 U.S. 231, 244 (2012). Here, Ware had three such sentences: (1) a sentence for a shooting that formed part of Ware's federal offense conduct, (2) the sentence for the unrelated March 2020 shooting, and (3) the escape sentence. The district court, over the Government's objection, chose to run the

federal sentence concurrent with the first state sentence, in line with USSG § 5G1.3(b)(2), as it formed part of the relevant conduct for the instant offense. But the other two convictions were entirely unrelated. There is no abuse of discretion in imposing a consecutive sentence in those circumstances. See., e.g., United States v. Jones, 89 F.4th 681, 686 (8th Cir. 2023) (affirming consecutive sentence to anticipated escape sentence).

Second, "[USSG §] 5G1.3 provides guidance that varies depending on whether a defendant's time served in state custody is, or will be, for conduct that is 'relevant' to the instant federal offense." United States v. Nelson, 982 F.3d 1141, 1144 (8th Cir. 2020). "'For time already spent in custody for *solely* relevant conduct' to the instant federal offense, the district court must adjust a sentence downward to account for time served, unless the Bureau of Prisons would otherwise credit that time to the defendant." Id. (quoting United States v. Winnick, 954 F.3d 1103, 1105 (8th Cir. 2020)). "In 'complex situations,' where a defendant is 'subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules,'" the district court has "discretion . . . to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment." Id. (citation omitted).

As already noted, the March 2020 shooting had nothing to do with the straw-purchasing conspiracy, and, at best, his escape charge is "a 'complex' case in which the court had discretion" to structure Ware's sentence.[4] See Nelson, 982 F.3d at 1145 (citation omitted). Though Ware argues that Winnick requires the district court to run his federal sentence concurrently with *all* of his undischarged state sentences, our decision in that case does not mandate such a reduction. See 954 F.3d at 1105 (noting that "no adjustment is necessary" for time spent in custody that did not result from relevant conduct). Under these circumstances, the district court did

---

[4]Ware's participation in the straw-purchasing conspiracy occurred while he was wanted for the escape from state custody underlying his escape charge.

not abuse its discretion when it refused to reduce Ware's sentence based on his undischarged state sentences for unrelated conduct.

## VI.

Accordingly, the judgment of the district court is affirmed.

_____