**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-14191

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KEITH PHARMS,

a.k.a. B-Boy,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court

for the Northern District of Georgia

D.C. Docket No. 1:23-cr-00004-JPB-JSA-2

————————————

Before JORDAN, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

A jury convicted Keith Pharms of five criminal charges arising from his involvement in a shooting at a federal officer in the

aftermath of a car theft and his subsequent conduct while in custody. He now appeals his 192-month sentence, arguing that it violates the Fifth and Sixth Amendments and is procedurally unreasonable because it is based on clearly erroneous facts. For the reasons which follow, we affirm.

**I**

Testimony at Mr. Pharms' trial established the following course of events.

On February 24, 2022, Mr. Pharms and two others, Jokava Harris and Blake Beard, drove a black Chevrolet SS (the "Chevy") to an apartment complex parking garage where they stopped next to an orange Dodge Charger Hellcat (the "Charger"). Mr. Harris broke into the Charger and drove away. Mr. Pharms and Mr. Beard followed in the Chevy. An Atlanta Police Department ("APD") Sergeant and FBI Task Force Officer, Will Johnson, was on patrol surveilling for stolen cars and believed the Chevy was suspected to be involved in the thefts, so he followed it. As he was following, Officer Johnson heard two separate rounds of gunfire; in the second round, his vehicle was struck, and a bullet narrowly missed him. Officer Johnson reported the event to dispatch, and after a pursuit, APD officers were able to disable the tires on the Charger, but the Chevy got away.

The next day, the South Fulton Police Department found the Chevy, and APD officers retrieved shell casings at the location of the shooting. Mr. Pharms and Mr. Harris were arrested on state

charges about a month later, and they and Mr. Beard were ultimately connected with the car theft and shooting.

Mr. Pharms was charged in a superseding federal indictment with one count of assault on a federal officer using a deadly and dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) & (b); one count of using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) & (iii); one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession of cell phones and other electronic devices while in prison, in violation of 18 U.S.C. §§ 1791(a)(2) & (d)(1)(F); and one count of possessing, while in prison, a prohibited object designed to facilitate escape, in violation of 18 U.S.C. §§ 1791(a)(2) & (d)(1)(B).

Mr. Pharms proceeded to trial. At his trial, Mr. Beard testified for the government, as did Avery Hardy, a cellmate of Mr. Pharms' while he was in custody. Mr. Beard testified that after Mr. Harris took the Charger, he was driving the Chevy, and, when they noticed a vehicle trailing them, Mr. Pharms fired shots at the vehicle following them. Corroborating that testimony, Mr. Hardy testified that Mr. Pharms told him he had shot at the vehicle following them after the theft and that he had later given the gun he used to Mr. Harris, the third person involved in the car theft.

The government also presented social media evidence depicting Mr. Pharms with a gun resembling the one matching the shell casings recovered from the scene. And it presented video evidence of the Chevy leaving the parking garage, in which the

passenger was wearing clothes consistent with what Mr. Pharms was wearing on that day.  On appeal, Mr. Pharms denies that the evidence showed he discharged a firearm during the offense.

Mr. Pharms was convicted on all five counts.  However, by a special interrogatory, the jury was asked, "As to Count 2, was the firearm discharged?"  The jury checked the "no" box.

After the trial, a probation officer prepared Mr. Pharms' presentence investigation report ("PSR"), which calculated the recommended sentencing range under the United States Sentencing Guidelines.  The PSR grouped Counts 1 and 3 pursuant to U.S.S.G. § 3D1.2(c) into Group A, and Counts 4 and 5 pursuant to § 3D1.2(b) into Group B.

For Group A, the PSR calculated an offense level of 22, consisting of the greater of the adjusted offense levels of Counts 1 and 3, which reflected: (1) a base offense level of 20 for Count 3; (2) no enhancement pursuant to § 2K2.1(b)(6)(b), which permits an increase in the offense level by four if a firearm was used in connection with another felony offense unless, according to the probation officer's reading of § 2K2.4 Note 4, a sentence on that underlying offense is also being imposed; and (3) a two-level upward adjustment for obstruction of justice.  The government objected to the probation officer's denial of the enhancement under § 2K2.1(b)(6)(b), which the district court overruled.  Mr. Pharms' counsel objected to any factual finding in the PSR that Mr. Pharms discharged the firearm during the offense.

For Group B, the PSR calculated an offense level of 13, consisting of the greater of the adjusted offense levels of Counts 4 and 5, which reflected: (1) a base offense level of 13 Counts 4 and 5 and (2) no enhancements or adjustments. Based on the adjusted offense levels for Groups A and B, the PSR calculated a total offense level of 22, reflecting the greater adjusted offense levels of the two groups and no adjustments for acceptance of responsibility or any other reason.

As to Count 2, pursuant to § 2K2.4(b), the PSR calculated the applicable guideline sentence as the minimum term of imprisonment required by statute: five years, running consecutively with any other term of imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i). The defense and the government both agreed with this calculation.

Based on these calculations, the PSR calculated a recommended guideline range of 63 to 78 months, plus 60 months consecutive to all other counts.

After the PSR was filed, the government moved for an upward variance, in light of the fact that Mr. Pharms shot at the vehicle following him, nearly striking Officer Johnson, and pressed its contention that a four-level enhancement should have applied to Count 3. The government therefore submitted that a 204-month total sentence was appropriate. Mr. Pharms filed a memorandum in response, arguing that the four-level enhancement did not apply, that his sentence should reflect credit for his time in state custody, and that the 18 U.S.C. § 3553 factors did not favor a longer sentence for several reasons. Mr. Pharms requested a 114-month sentence.

At the sentencing hearing, the district court denied the four-level enhancement, but concluded that the evidence supported a finding by the preponderance of the evidence that Mr. Pharms had been the shooter. The court reasoned that, "even if we were, as the defense would argue, going to throw out Mr. Hardy's testimony entirely, we still have . . . Mr. Beard's testimony," and reasoned further that "it makes a lot more sense that it be [sic] the passenger who is firing the shots, and especially here, someone who was able to fire a shot accurately enough from one car to another to come within inches of hitting the person." D.E. 172 at 38–39. Thus, the court found that it was more likely than not that Mr. Pharms had shot at Officer Johnson. The court also noted that the social media evidence and Mr. Hardy's testimony—even if not entirely credited—added weight to its conclusion.

Thus, over the defense's objection, the district court varied upward based on the finding that Mr. Pharms had discharged the weapon at Officer Johnson and sentenced him to 192 months in prison, reduced by his time served in state custody. That sentence fell within the maximum sentence authorized by the jury's verdict because Mr. Pharms' conviction for assault on a federal officer carried at 240-month statutory maximum, but the court noted that the sentence would have been lower had it not found that Mr. Pharms was the shooter.

Mr. Pharms now contends that this sentence is both unconstitutional and procedurally unreasonable.

## II

We review constitutional challenges to a sentence de novo. *See United States v. Pope*, 461 F.3d 1331, 1333 (11th Cir. 2006). We review the procedural reasonableness of a sentence for abuse of discretion. *See United States v. Gyetvay*, 149 F.4th 1213, 1239 (11th Cir. 2025). And we review factual findings for clear error. *See United States v. Ford*, 784 F.3d 1386, 1396 (11th Cir. 2015).

## III

Mr. Pharms first contends that the district court violated the Sixth Amendment when it enhanced his sentence based on a finding that he committed conduct of which the jury acquitted him—namely, that he shot at Officer Johnson. He argues that because the Sixth Amendment, in conjunction with the Due Process Clause, requires that each element of a crime be proven to the jury beyond a reasonable doubt, enhancement of a sentence based upon acquitted conduct violates the Sixth Amendment right to a jury trial. The government asserts that this argument is foreclosed by our precedents, namely *United States v. Maddox*, 803 F.3d 1215 (11th Cir. 2015), and *United States v. Rushin*, 844 F.3d 933 (11th Cir. 2016), as well as Supreme Court precedent in *United States v. Watts*, 519 U.S. 148 (1997). We agree with the government.

We have long permitted sentencing courts to take into account acquitted conduct proven by a preponderance of the evidence. *See e.g.*, *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006). Sentencing enhancements on the basis of such a finding "do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he

committed the crime of conviction." *Id.* (quoting *Watts*, 519 U.S. at 154). Thus, a host of cases from this Court have upheld, over Sixth Amendment challenges, sentence enhancements that were based on facts or conduct for which a defendant was acquitted but which the sentencing court found established by a preponderance of the evidence. *See, e.g.*, *United States v. Duncan*, 400 F.3d 1297, 1304–05 (11th Cir. 2005) (affirming sentence based on a fact that had been acquitted by the jury in a special verdict). *See also Faust*, 456 F.3d at 1348; *United States v. Smith*, 741 F.3d 1211 (11th Cir. 2013); *Rushin*, 844 F.3d at 942. For example, in *Maddox*, we affirmed the application of a sentencing enhancement under U.S.S.G. § 1B1.3, permitting a district court to consider "all relevant conduct" in calculating the appropriate sentence that was based on conduct of which the defendant had been acquitted. *See* 803 F.3d at 1220–1222. And in *Faust*, we again upheld a sentence enhancement based on acquitted conduct where the ultimate sentence fell below the maximum sentence authorized by the jury verdict. *See* 456 F.3d at 1348.

Mr. Pharms resists this conclusion, first arguing that the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), demonstrate that his sentence based on acquitted conduct is unconstitutional. Not so. These cases stand for the proposition that a sentencing court must submit to the jury any question of fact necessary to enhance punishment or a sentence *above* the maximum sentence authorized by the statute and the jury verdict. *See*

*Apprendi*, 530 U.S. at 490 ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt."); *Ring*, 536 U.S. at 589 ("Capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."); *Blakely*, 542 U.S. at 301–04 (applying *Apprendi* to reverse three-year enhancement based on facts not admitted by the defendant or found by the jury); *Booker*, 543 U.S. at 226–27 (holding that the Sixth Amendment limitation on sentencing enhancements as construed in *Blakely* applies to the Sentencing Guidelines).

The Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *Booker*, 543 U.S. at 233 (citing *Apprendi*, 530 U.S. at 481). Thus, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination on the facts the judge deems relevant." *Id*. Here, the jury verdict—convicting Mr. Pharms of assault on a federal officer and use of a deadly weapon—authorized a maximum statutory penalty of 240 months. Mr. Pharms is not entitled to a jury determination on a fact the sentencing court deemed relevant in selecting a sentence (here, 192 months) within the range authorized by statute and the jury's verdict.

Mr. Pharms next points to a recent amendment to U.S.S.G. § 1B1.3, which excludes consideration of acquitted conduct, in certain circumstances, for purposes of the Sentencing Guidelines

calculations:   "Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction."   § 1B1.3(c) (effective Nov. 1, 2024).

The impact of that amendment on our acquitted conduct sentencing precedents is yet to be determined.  *See United States v. Touray*, 151 F.4th 1317, 1332 (11th Cir. 2025) (declining to address the effect of this amendment, which had not yet taken effect at the time of the defendant's sentencing); *United States v. Romeu*, 2026 WL 36113, at *3 (11th Cir. Jan. 6, 2026) (explaining that this amendment has not been made retroactive).  But we have no occasion to question our precedents or those of the Supreme Court in this appeal.  As two other federal courts of appeals have reasoned, this amendment to the Guidelines does not limit the scope of conduct a sentencing court can consider under § 3553(a), i.e., the sentencing court's sentencing authority separate from calculating the Guideline range.  *See United States v. Ware*, 141 F.4th 970, 974 n.2 (8th Cir. 2025) ("[T]he [amended] Guideline [§ 1B1.3(c)] does not prohibit a court from considering acquitted conduct when analyzing the factors from § 3553(a), as the district court did here."); *United States v. Ralston*, 110 F.4th 909, 921 (6th Cir. 2024) ("[T]he 'amendment precludes consideration of acquitted conduct in the context of *calculating the [G]uidelines*,' but . . . a court may still consider acquitted conduct when 'imposing a sentence.'") (quoting Vice Chair Claire Murray, Remarks at United States Sentencing Commission Public

Meeting, Apr. 17, 2024). Thus, the amendment does not affect the district court's discretionary application of the § 3553 factors here.

In sum, our precedents confirm that the district court did not act unconstitutionally in varying upward on the basis of conduct of which Mr. Pharms was acquitted under the higher beyond-a-reasonable-doubt standard. *See Faust*, 456 F.3d at 1348 ("[U]nder an advisory Guidelines scheme, courts can continue to consider relevant acquitted conduct so long as the facts underlying the conduct are proved by a preponderance of the evidence and the sentence imposed does not exceed the maximum sentence authorized by the jury verdict."). The remaining authorities to which Mr. Pharms refers us—all nonbinding, non-majority decisions—do not persuade us otherwise.[1]

Mr. Pharms was sentenced to a term of imprisonment within the maximum sentence authorized by the jury's verdict, and the use of acquitted conduct to vary upward within that range did not violate the Sixth Amendment.

## IV

Mr. Pharms next contends that the same variance—an enhancement of his sentence based on conduct for which he was acquitted by the jury—violated the Due Process Clause of the Fifth

---

[1] We acknowledge the growing number of opinions, to which Mr. Pharms refers, criticizing the use of acquitted conduct at sentencing. But until either this Court sitting en banc or the Supreme Court abrogates our existing precedents, we are bound to follow them. *See Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy County*, 59 F.4th 1158, 1164 (11th Cir. 2023).

Amendment.  Mr. Pharms argues that *In re Winship*, 397 U.S. 358 (1970), establishes that due process protects him from conviction except upon proof beyond a reasonable doubt of every element of the crime and that enhancement of a sentence based upon facts found by a preponderance of the evidence violates that constitutional protection.  And he contends that reliance on acquitted conduct increases the risk of inaccurate sentencing and violates the fair notice requirement.

Like his Sixth Amendment argument, Mr. Pharms' Fifth Amendment due process arguments are foreclosed by our precedents.  *See Touray*, 151 F.4th at 1332 ("So long as the sentence imposed by the district court does not 'exceed the sentence authorized by the jury verdict' and is supported by a preponderance of the evidence, it does not violate the Fifth or Sixth Amendments to consider acquitted conduct at sentencing.") (quoting *United States v. Culver*, 598 F.3d 740, 752–53 (11th Cir. 2010).  *See also Culver*, 598 F.3d at 752–53 (holding that a sentence based on acquitted conduct that is within the maximum authorized by the jury verdict does not violate the due process clause of the Fifth Amendment); *Maddox*, 803 F.3d at 1221 n.2 (citing *United States v. Clay*, 483 F.3d 739, 744 (11th Cir. 2007)).

In *Clay*, for example, we upheld a sentencing enhancement over a due process challenge similar to the one Mr. Pharms brings here.  *See* 483 F.3d at 744.  There, the defendant, Clay, was indicted for his participation in a conspiracy to manufacture and possess with intent to distribute methamphetamine and for possession of

pseudoephedrine, but the jury acquitted him of the conspiracy charges, convicting him only of possession of pseudoephedrine. *See id.* at 742. Nonetheless, the sentencing court found by a preponderance of the evidence that Clay had participated in the manufacture of 1.5 kilograms of methamphetamine and enhanced his sentence accordingly. *Id.* While acknowledging the possibility that a due process violation could occur in "extreme circumstances," we affirmed the enhanced sentence over Clay's due process argument, reasoning that it was not extraordinary and was within the range authorized by the jury's verdict. *See id.* at 744. So too here, the district court's imposition of an enhanced sentence—neither extraordinary nor exceeding the maximum authorized by the jury verdict—did not violate due process.

Mr. Pharms' arguments about fair notice and inaccuracy fare no better. Mr. Pharms relies on *Townsend v. Burke*, 334 U.S. 736, 740–41 (1948), but in that case a defendant, without the benefit of counsel, was sentenced on "a foundation so extensively and materially false" as to render "the proceedings lacking in due process." *Id.* at 741. The Supreme Court made clear that it was "not reaching th[e] result because of [the] petitioner's allegation that his sentence was unduly severe." *Id.* Here, as we explain below, the district court's factual findings in support of the sentencing enhancements were supported by a preponderance of the evidence, a far cry from established to be "materially false." *Townsend* is inapposite.

We therefore hold, consistent with our precedents, that Mr. Pharms' sentence was not imposed in violation of the Due Process Clause of the Fifth Amendment.

## V

Lastly, Mr. Pharms contends that his sentence is procedurally unreasonable because it is based upon clearly erroneous facts. "For a finding to be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake has been committed." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). Based on the evidence presented at trial and referred to in the sentencing hearing, we do not have such a conviction.

Two principles guide our decision here. First, the district court may make reasonable inferences from the evidence presented at trial and the sentencing hearing. *See United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020) ("The district court may base factual findings on evidence presented at trial . . . or evidence presented at the sentencing hearing, and it may make reasonable inferences from the evidence.") (citations omitted). And second, "[w]here a fact pattern gives rise to two reasonable and different constructions, 'the factfinder's choice between them cannot be clearly erroneous.'" *Almedina*, 686 F.3d at 1315 (quoting *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006)).

There was ample evidence to support the district court's factual finding that Mr. Pharms was the shooter. Video evidence showed that Mr. Pharms was the passenger in the Chevy from which a firearm was discharged, while Mr. Beard was the driver. It

was a reasonable inference for the district court to draw, as it did, from that evidence that Mr. Pharms was the more likely to have discharged the firearm.  That inference is further supported by testimony from Mr. Pharms' cellmate, Mr. Hardy, who testified that Mr. Pharms told him as much, and, more critically, by Mr. Beard who testified that he was driving the car and that Mr. Pharms fired the shots.  In light of this evidence, we cannot say that the district court's finding was clearly erroneous.  Even if it were equally reasonable to infer that Mr. Beard discharged the firearm, we still could not say that the district court's factual finding constituted reversible error.  *See Almedina*, 686 F.3d at 1315.

Mr. Pharms nevertheless asserts that the district court's finding that he discharged the firearm in the course of the relevant incident was clearly erroneous because it (1) disregarded the jury's conclusion on that issue; (2) was based on Officer Johnson's testimony, but Officer Johnson did not see who was shooting from the other car; (3) was inconsistent with the fact that the bullet in Officer Johnson's car matched a gun found at a co-defendant's home; and (4) was based on testimony of "convicted criminals who were plainly incentivized to testify in a way which could potentially lessen their sentences."  *See* Appellant's Brief at 31.  None of these arguments establish clear error.

First, the standard of proof for a fact determined at sentencing is preponderance of the evidence, on which the government bears the burden.  *See Maddox*, 803 F.3d at 1220 (citing *Faust*, 456 F.3d at 1347, 1348).  Therefore, the jury's response to the special

16                  Opinion of the Court                24-14191

interrogatory in the negative does not establish that the district court clearly erred in finding that the government *did* establish that Mr. Pharms discharged the firearm by the lower preponderance of the evidence standard. *See id.* at 1221 ("[A]n acquittal does not mean that the defendant is innocent of any particular aspect of the charged criminal conduct; it simply means that the Government failed to prove the defendant guilty beyond a reasonable doubt.") (citation omitted). *See also Watts*, 519 U.S. at 155 ("An acquittal is not a finding of any fact. An acquittal can only be an acknowledgement that the government failed to prove an essential element of the offense beyond a reasonable doubt.") (quotations and citations omitted).

Second, with or without Officer Johnson's personal knowledge of who discharged the firearm, the district court found Mr. Beard to be credible, and he testified that Mr. Pharms was the shooter. Mr. Pharms contends that Mr. Hardy and Mr. Beard were both unreliable because they are convicted criminals who are incentivized to testify in a way which could lessen their sentences, but we afford substantial deference to the district court's credibility determinations. *See Maddox*, 803 F.3d at 1220. Thus, "[w]e will accept a factfinder's credibility determination unless the proffered evidence is 'contrary to the laws of nature' or is 'so inconsistent or improbable on its face that no reasonable factfinder could accept it.'" *Id.* (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)). A criminal history or a motive to lie does not establish that Mr. Beard's testimony was incredible. *See id.* ("The fact that a witness is of dubious character does not, by itself, render

his testimony incredible." (citing *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009)).  We therefore decline Mr. Pharms' invitation to ignore the district court's credibility determination as to Mr. Beard.  That testimony, in addition to the video evidence and reasonable inferences drawn therefrom, adequately supports the district court's factual finding by the preponderance of the evidence.

Because the district court's factual finding was not clearly erroneous and Mr. Pharms does not argue his sentence was procedurally unreasonable for any other reason, the district court did not abuse its discretion in imposing the sentence it did.

## VII

We hold that Mr. Pharms' sentence is neither constitutionally infirm nor procedurally unreasonable.

**AFFIRMED.**