**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-12484

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

HECTOR CABALLERO,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00409-WFJ-SPF-1

————————————

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Hector Caballero appeals his convictions and 210-month sentence for conspiring to possess with intent to distribute and possessing with intent to distribute five kilograms or more of

cocaine while aboard a vessel subject to the jurisdiction of the United States.

On appeal, Caballero argues that (1) the Maritime Drug Law Enforcement Act ("MDLEA") is unconstitutional; (2) the district court erred in calculating his advisory guidelines range; and (3) his 210-month sentence is substantively unreasonable. After careful review, we affirm Caballero's convictions and sentence.

## I.  BACKGROUND

A federal grand jury charged Caballero and three codefendants with (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), (b); and (2) knowingly possessing with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a). Caballero's three codefendants pled guilty, and Caballero alone proceeded to trial.

## A.    The Jury Trial

At trial, the government called four U.S. Coast Guard officers[1] and Caballero's codefendant Jesus Silvino.

---

[1] The government called (1) Captain Gregory Matyas, (2) Petty Officer Joshua Frazier, (3) Chief Nicolas Acuna, and (4) Special Agent Steven Ray.

Silvino testified to the following. Silvino was from Venezuela and worked as a fisherman. Silvino was acquainted with Caballero, who worked as a ship captain.

In late October or early November 2022, Silvino decided to leave Venezuela and go with Caballero to the United States. First, they traveled from Venezuela to Maicao, Colombia. At a bus terminal in Maicao, the two men were approached by another man called "El Grande" who offered them money to transport drugs.

Silvino and Caballero accepted the job. They both travelled about eight hours by car from Maicao to Guajira, Colombia, where they found the vessel that they would pilot. The boat was filled with cocaine under a blue tarp. Silvino saw Caballero speaking to people near the shore, and they handed Caballero a GPS device. Silvino and Caballero were joined by the other two codefendants and departed in the boat.

After the men were at sea for one night, a U.S. Coast Guard helicopter spotted them. The helicopter shot out their vessel's engines and, about half an hour later, Coast Guard members boarded their vessel.

Regarding Caballero's role, Silvino testified that: (1) Silvino was to be paid 50 million Colombian pesos;[2] (2) El Grande offered Caballero more money than Silvino because Caballero was to be the captain of the vessel; (3) Caballero was in fact the captain;

---

[2] Coast Guard Special Agent Ray later testified that 50 million Colombian pesos was worth approximately 10,000 U.S. dollars.

(4) during the trip, Caballero always had the GPS device, and Silvino did not know where they were going; (5) only Caballero and Silvino would drive the boat and Caballero would tell Silvino where to drive; and (6) when the Coast Guard boarded their vessel, Caballero spoke to them as the captain of the vessel.

The Coast Guard officers testified about apprehending Caballero's vessel on November 6, 2022. At first, Caballero's vessel evaded the officers, but they ultimately stopped when an officer in a helicopter shot and disabled the vessel's motors. The Coast Guard boarded the vessel and identified four crew members, including Caballero. Caballero stated that the vessel was Colombian and its purpose was fishing. The parties stipulated that the Coast Guard discovered 28 bales of suspected cocaine from Caballero's vessel, which was later confirmed to be 708 kilograms of pure cocaine.

At the conclusion of the trial, the jury convicted Caballero on both drug charges.

## B.    The Presentence Investigation Report

Using the 2021 Sentencing Guidelines, the probation officer prepared a presentence investigation report ("PSI") for Caballero. The PSI stated that the Coast Guard officers, who searched the vessel, discovered 28 bales of suspected cocaine, which was later confirmed to be 708 kilograms of cocaine and 105.63 grams of cocaine base. The PSI calculated a total offense level of 40, which included: (1) a base offense level of 38 based on the drug amount under U.S.S.G. §§ 2D1.1(a)(5) and (c)(1); and (2) a two-level

increase under U.S.S.G. § 2D1.1(b)(3)(C)[3] because Caballero "acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer" aboard the vessel. The PSI noted that at the time of its preparation, Caballero had not demonstrated acceptance of responsibility for the offense, and thus it did not apply any reduction.

Caballero's criminal history category was I under the advisory guidelines. However, the PSI noted that in 2018 in Spain, Caballero was convicted for smuggling cocaine at sea. Specifically, Caballero was found responsible for smuggling 1,982.5 kilograms of cocaine, or $76 million worth, aboard a vessel and was sentenced to six years and one day in prison for this crime.

Based on a criminal history category of I and a total offense level of 40, Caballero's advisory guidelines range was 292 to 365 months of imprisonment. The statutory maximum for his convictions was life in prison. 21 U.S.C. § 960(b)(1)(B)(ii).

Caballero objected to the PSI's application of the two-level increase under U.S.S.G. § 2D1.1(b)(3)(C), arguing that he was not the captain of the vessel. Caballero also contended that he was entitled to "safety-valve" relief under U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a) and 18 U.S.C. § 3553(f) because he met the requirements of those provisions and was scheduled to provide a truthful proffer interview prior to his sentencing.

---

[3] The PSI references U.S.S.G. § 2D1.1(b)(3)(B), but the two-level captain increase it applied is actually located at § 2D1.1(b)(3)(C).

6                    Opinion of the Court                 23-12484

In response, the amended PSI noted that if the court were to apply the safety-valve provisions, a two-level decrease would apply to Caballero's offense level.  This would result in a total offense level of 38 and an advisory guidelines range of 235 to 293 months of imprisonment.

## C.    Sentencing Hearing on July 25, 2023

At the sentencing hearing on July 25, 2023, the parties agreed that Caballero was now eligible for safety-valve relief under U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a) and 18 U.S.C. § 3553(f).  This resulted in a two-level decrease to his total offense level, from 40 to 38. U.S.S.G. § 2D1.1(b)(18).

Caballero then reasserted his argument that the PSI's two-level captain increase in U.S.S.G. § 2D1.1(b)(3)(C) should not apply.  Counsel acknowledged that Silvino testified that Caballero was the captain of their vessel, but countered that (1) Silvino was driving the boat when the helicopter spotted them and (2) Caballero's job was merely "to make sure the GPS coordinates were input correctly by [] Silvino and to make sure that they were on the right bearing."  Caballero's counsel contended that this was insufficient for the role increase to apply.

The government responded that the captain-role increase in § 2D1.1(b)(3)(C) was appropriate because of Silvino's sworn testimony that Caballero was the captain of their vessel.  The government argued that even if Caballero and Silvino were co-captains, the role increase would still apply to Caballero.

The district court overruled Caballero's objection to the two-level captain increase under U.S.S.G. § 2D1.1(b)(3)(C). The court explained that it "credited Silvino's testimony" and "thought he told the truth" about Caballero's being the captain.

Caballero's total offense level became 38 consisting of: (1) a base offense level of 38 given the drug quantities; (2) a two-level captain-role increase; and (3) a two-level safety-valve decrease. With a total offense level of 38 and a criminal history category of I, his advisory guidelines range was 235 to 293 months of imprisonment.

The government argued that a sentence within the advisory guidelines range was appropriate. It acknowledged that Caballero's age—he was 70 years old at sentencing—was a mitigating factor. On the other hand, the government pointed out that this was Caballero's second conviction for similar conduct, referencing his Spain conviction for cocaine smuggling. The government argued that even though Caballero likely would be in his 80s when released, he could still reoffend by acting as a recruiter or a route planner.

Caballero's counsel asked for a sentence below the advisory guidelines range, arguing that a guidelines sentence would be "way greater than necessary for the goals of sentencing." Counsel argued that Caballero was 70 years old and "desperate and dying of diabetes" at the time he committed the offense. Caballero's counsel argued that Caballero was not likely to reoffend given that (1) he was now receiving the medical care he needed, and (2) he

was a successful fisherman before the Venezuelan government collapsed around 2017.

Counsel also pointed out that Caballero's codefendants received sentences of 63 months, 78 months, and 102 months. Even considering that Caballero went to trial and his codefendants pled guilty, Caballero's counsel argued a sentence within the advisory guidelines range would create an unjustified disparity between him and his codefendants.

Caballero personally addressed the court and said that he was caught in bad circumstances with his Spain conviction and the present offense. He asked the court to show mercy because of his age and poor health.

The district court sentenced Caballero to 210 months of imprisonment, which was below his advisory guidelines range of 235 to 293 months. The district court explained that it typically sentenced repeat drug smugglers to 20 years imprisonment or higher, but it would vary slightly below the advisory guideline range because of Caballero's "age," "history," "characteristics," and "impoverished upbringing." The court also stated that a 210-month sentence was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing" based on 18 U.S.C. §§ 3553(a) and 3551.

Caballero timely appealed.

## II.  CONSTITUTIONAL CLAIMS

The MDLEA makes it a crime to knowingly or intentionally possess a controlled substance with intent to distribute while onboard a vessel subject to the jurisdiction of the United States and to conspire to do the same.  46 U.S.C. §§ 70503(a)(1), (e)(1) and 70506(b).  The MDLEA criminalizes such activity even when "the act is committed outside the territorial jurisdiction of the United States."  *Id.* § 70503(b).  Congress enacted the MDLEA pursuant to the Felonies Clause in Article I, Section 8, Clause 10 of the Constitution.  *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014).  Under the Felonies Clause, Congress has the power to "define and punish Piracies and Felonies committed on the high Seas."  U.S. Const. art. I, § 8, cl. 10.

For the first time on appeal, Caballero raises three constitutional challenges to the MDLEA.  First, Caballero contends that Congress's power to "punish . . . Felonies committed on the high Seas" is limited only to those crimes having some nexus to the United States.  Caballero argues that his offense fell outside of Congress's reach because his offense bore no such nexus.  Second, Caballero argues that his prosecution violates due process because his offense had no connection to the United States.  Third, he asserts that Congress's power to punish offenses under the Felonies Clause does not extend to offenses committed inside another nation's Exclusive Economic Zone ("EEZ") because such waters are not part of the "high Seas."  Caballero seems to acknowledge that each of these arguments is foreclosed by Circuit precedent, but he seeks to preserve the challenges for purposes of further review.

We review *de novo* questions of "[t]he district court's subject matter jurisdiction . . . even when . . . raised for the first time on appeal." *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016) (citations omitted). Outside of jurisdictional issues, however, "when a defendant raises a constitutional challenge for the first time on appeal, we review only for plain error."[4] *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024) (citing *United States v. Valois*, 915 F.3d 717, 729 n.7 (11th Cir. 2019)).

Each of Caballero's constitutional arguments is foreclosed by this Court's precedent. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*.").

First, in *Campbell*, we held that the MDLEA is constitutional under the Felonies Clause as applied to vessels on the "high seas" engaged in drug trafficking crimes, even without a nexus to the United States. *Campbell*, 743 F.3d at 810. This Court explained that "the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles

---

[4] "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Alfonso*, 104 F.4th 815, 829 (11th Cir. 2024) (citing *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005)). "If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration adopted).

support its extraterritorial reach." *Id.* Given that trafficking drugs is "condemned universally by law-abiding nations," it is not "fundamentally unfair" to punish those who traffic drugs on the high seas. *Id.* (quotation marks omitted).

As for Caballero's second claim, this Court also held in *Campbell* that the prosecution of a foreign national for "drug trafficking aboard [a] stateless vessel[] on the high seas" is not prohibited by the Due Process Clause, as the MDLEA "provides clear notice that all nations prohibit" such conduct. *Id.* at 812.

As for Caballero's third claim that the MDLEA cannot punish conduct committed in another nation's EEZ, this Court rejected that argument in *Alfonso*. 104 F.4th at 825. The *Alfonso* Court held that "the EEZ is part of the 'high seas' and thus within Congress's authority under the Felonies Clause." *Id.* at 818. This Court further concluded that "international law does not limit the Felonies Clause" and that "enforcement of the MDLEA in EEZs is proper." *Id.* at 826-27; *see also United States v. Canario-Vilomar*, 128 F.4th 1374, 1381-82 (11th Cir. 2025) (rejecting similar constitutional challenges by defendants interdicted in other nations' EEZs as foreclosed by *Alfonso*).

Here, we are bound by our *Campbell* precedent to conclude that Caballero's convictions under the MDLEA are constitutional under the Felonies Clause and do not violate the Due Process Clause. *See Archer*, 531 F.3d at 1352; *Campbell*, 743 F.3d at 810. Likewise, we are bound by our *Alfonso* precedent to conclude that enforcement of the MDLEA was proper here because the meaning

of "high seas" under the Felonies Clause and the MDLEA extends to the EEZs of foreign nations.  *See Archer*, 531 F.3d at 1352; *Alfonso*, 104 F.4th at 827.

### III.  CAPTAIN INCREASE UNDER § 2D1.1(b)(3)(C)

As his first challenge to his sentence, Caballero argues that the district court clearly erred in its fact finding that he was the captain of the vessel and thus in applying the two-level captain increase under U.S.S.G. § 2D1.1(b)(3)(C).

### A.    Standard of Review

"The district court's determination of the defendant's role in the criminal offense is a finding of fact we review for clear error." *United States v. Hill*, 783 F.3d 842, 846 (11th Cir. 2015); *see also United States v. Cartwright*, 413 F.3d 1295, 1298-99 (11th Cir. 2005) (reviewing the district court's findings of fact to establish the two-level captain enhancement for clear error).

In reviewing a district court's fact finding, "[t]he court's choice between two permissible views of the evidence will rarely constitute clear error, so long as the basis of the trial court's decision is supported by the record and the court did not misapply a rule of law." *Valois*, 915 F.3d at 731.

Further, "[w]here the district court has made a determination as to a witness's credibility, we afford that determination substantial deference." *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015).  This Court "will accept a factfinder's credibility determination unless the proffered evidence

is 'contrary to the laws of nature' or is 'so inconsistent or improbable on its face that no reasonable factfinder could accept it.'" *Id.* (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)). "The fact that a witness is of dubious character does not, by itself, render his testimony incredible." *Id.*

## B.    Captain Evidence

U.S.S.G. § 2D1.1(b)(3)(C) provides for a two-level increase "[i]f the defendant unlawfully imported or exported a controlled substance under circumstances in which . . . [he] acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance." Whether a crewmember of a smuggling vessel was the "captain" for these purposes depends on the evidence in the particular case. This Court has explained that a captain generally acts as the "ship's ultimate decisionmaker," and a crewmember can be the "captain" of a vessel "even when [he] delegates aspects of the operation of the vessel." *United States v. Hernandez*, 864 F.3d 1292, 1309 (11th Cir. 2017).

Here, the district court did not clearly err in finding that Caballero was the captain of the vessel, triggering the two-level increase under U.S.S.G. § 2D1.1(b)(3)(C). At trial, Caballero's crewmate and codefendant Silvino explicitly testified that Caballero was the captain of their vessel and recounted facts about the voyage that supported that testimony.

For example, Silvino testified that he was offered 50 million Colombian pesos to smuggle the drugs, but that Caballero was

offered more because he was the captain.  Silvino also testified that before their vessel departed, he saw Caballero talking to people and saw the people hand Caballero a GPS device.  Caballero exclusively held the GPS device throughout the voyage.  Although Silvino and Caballero took turns driving the vessel, Caballero instructed Silvino on where to drive.

The district court stated explicitly that it considered Silvino's testimony and found that "he told the truth."  This credibility finding is entitled to "substantial deference."  *Maddox*, 803 F.3d at 1220.  Because Silvino's testimony identifying Caballero as the captain is neither "contrary to the laws of nature" nor "so inconsistent or improbable on its face that no reasonable factfinder could accept it," this Court defers to the district court's determination.  *Id.* (quoting *Ramirez-Chilel*, 289 F.3d at 749).

Silvino's credited testimony about Caballero's role was sufficient for the district court to make a fact finding that Caballero was the captain of the vessel within the meaning of § 2D1.1(b)(3)(C).  Silvino showed that (1) the crew perceived Caballero to be the captain, (2) Caballero controlled the GPS device and navigation of the vessel, and (3) Caballero spoke on behalf of the crew to the Coast Guard.  This all indicates that Caballero was the "ship's ultimate decisionmaker."  *Hernandez*, 864 F.3d at 1309. The fact that Caballero and Silvino took turns driving the boat does not negate that Caballero was the captain because a captain can "delegate[] aspects of the operation of the vessel."  *Id.*

In sum, the district court's fact finding that Caballero was the captain of the smuggling vessel was not clearly erroneous, and the district court did not err by applying the two-level role increase under § 2D1.1(b)(3)(C).

## IV.  MITIGATING ROLE DECREASE UNDER § 3B1.2

Caballero next argues, for the first time on appeal, that he should receive a mitigating role decrease to his offense level under § 3B1.2 and the new provision in U.S.S.G. § 2D1.1(e) that was enacted in 2025 after Caballero's sentencing on July 25, 2023.

This new provision in § 2D1.1(e) provides additional instructions for when the § 3B1.2 mitigating role decrease should apply in drug trafficking cases.  U.S.S.G. § 2D1.1(e)(2)(B). Caballero argues that § 2D1.1(e) is only a clarifying—not substantive—amendment to § 3B1.2 and thus should apply retroactively to his case.

### A.    Clarifying Amendments on Direct Appeal

When Caballero was sentenced on July 25, 2023, the November 1, 2021 version of the guidelines was in effect and applied to Caballero's case. *See United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011) (explaining that courts apply the guidelines version in effect on the date of sentencing).  The 2021 guidelines included the general mitigation role decrease, U.S.S.G. § 3B1.2, but did not include the new provision about when to apply § 3B.1.2 in drug trafficking cases, U.S.S.G. § 2D1.1(e) (2025) (entitled "Special Instructions").

Clarifying amendments to the advisory guidelines, those that merely clarify existing provisions in the guidelines, should be considered on appeal regardless of the date of sentencing. *Jerchower*, 631 F.3d at 1184. However, substantive amendments are not applied retroactively on direct appeal. *Id.*

For purposes of this appeal, we will presume, as Caballero argues, the new provision in § 2D1.1(e) is only a clarifying amendment to § 3B1.2. That is because, as explained below, Caballero would not be entitled to a § 3B1.2 mitigating role decrease even if § 2D1.1(e), as a clarifying amendment, applies retroactively to his case.

## B.    Standard of Review

As further background, in the district court, Caballero never asked for a mitigating role decrease under § 3B1.2. He also did not object to the PSI's failure to include a § 3B1.2 role decrease in its recommended advisory guidelines range, nor did he object to the district court's failure to include § 3B1.2 in its ultimate advisory guidelines range calculation.

This Court generally reviews *de novo* a district court's application of the advisory sentencing guidelines. *Jerchower*, 631 F.3d at 1184.

When a defendant fails to preserve a claim of procedural error in the district court, such as by failing to ask for a particular guideline provision, we review only for plain error. *United States v. Johnson*, 980 F.3d 1364, 1378 (11th Cir. 2020) (citing *United States v. Waters*, 937 F.3d 1344, 1358-59 (11th Cir. 2019)).

Caballero argues that the new provision § 2D1.1(e) is merely a clarifying amendment to § 3B1.2.  Because Caballero did not ask for a § 3B1.2 mitigating role decrease in the district court, plain error applies to Caballero's request on appeal for a mitigating role decrease under § 3B1.2, as presumptively clarified by § 2D1.1(e)(2)(B).  *See id.*

## C.    The Role Decrease in § 3B1.2

The general mitigating role decrease is located in U.S.S.G. § 3B1.2.  Under that provision, a defendant is entitled to a four-level decrease to his offense level if he "was a minimal participant in any criminal activity."  U.S.S.G. § 3B1.2(a).  And if he was a minor participant, he is entitled to a two-level decrease.  *Id.* § 3B1.2(b).

The new § 2D1.1(e), effective November 1, 2025, is entitled "Special Instructions."  More specifically, § 2D1.1(e)(2)(B) provides in relevant part:

> (B) In addition to the circumstances identified in § 3B1.2, an adjustment under § 3B1.2 is generally warranted if the defendant's primary function in the offense *was performing a low-level trafficking function.*
>
> (i) An adjustment under § 3B1.2(a) is generally warranted if the defendant's primary function in the offense *was plainly among the lowest level of drug trafficking functions*, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout; or

(ii) an adjustment under § 3B1.2(b) is generally warranted if the defendant's primary function in the offense *was performing another low-level trafficking function*, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (*e.g.*, the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

*Id.* § 2D1.1(e)(2)(B)(i)-(ii) (2025) (emphasis added).

**D.    Analysis**

In this appeal, this Court will presume, and not decide, that U.S.S.G. § 2D1.1(e)(2) is a clarifying amendment that applies retroactively on direct appeal. Even so, Caballero would not be entitled to the mitigating role adjustment. As discussed above, we defer to the district court's fact finding that Silvino testified truthfully and Caballero was the captain of the vessel transporting 708 kilograms of cocaine and 105.63 grams of cocaine base. These fact findings wholly refute that Caballero was a "low-level" drug trafficker. *See* U.S.S.G. § 2D1.1(e)(2)(B) (2025).

Silvino testified that Caballero was the captain of their vessel and was promised more than 50 million Colombian pesos, which would be approximately 10,000 U.S. dollars, for the job. The drug quantities on board Caballero's vessel were not disputed. Patently, § 2D1.1(e)(2)(B)(i) does not apply to Caballero because his conduct was not "plainly among the lowest level of drug trafficking

functions." *Id.* § 2D1.1(e)(2)(B)(i). And § 2D1.1(e)(2)(B)(ii) does not apply because Caballero was not distributing "user-level" quantities, nor was he moving drugs for "little or no monetary compensation." *Id.* § 2D1.1(e)(2)(B)(ii).

In sum, Caballero was the captain of a vessel carrying huge amounts of cocaine for a large sum of money. He was far from a low-level courier or user-quantity seller. Thus, even if the 2025 amendment in U.S.S.G. § 2D1.1(e)(2) were a clarifying amendment that we consider and apply retroactively on appeal, Caballero would not be entitled to a mitigating role decrease under *de novo* review, much less plain error. Accordingly, the district court did not plainly err by failing to decrease Caballero's offense level under § 3B1.2.

## V. SUBSTANTIVE REASONABLENESS

Finally, Caballero contends that his 210-month sentence is substantively unreasonable because his crimes were non-violent drug offenses. Caballero argues that because he was in his 70s and in poor health when sentenced, he essentially received a life sentence. Caballero also asserts that the district court failed to avoid unwarranted sentencing disparities among him and his codefendants.

### A.    Standard of Review

We review the substantive reasonableness of a sentence for an abuse of discretion in light of the § 3553(a) factors and the

totality of the circumstances.[5]  *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023).  The party challenging the sentence, here Caballero, bears the burden of establishing that it is unreasonable.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

## B.    Substantive Reasonableness Principles

Although this Court "do[es] not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the [g]uidelines range to be reasonable." *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (citation modified).  That a sentence is below the advisory guidelines range is an indicator that the sentence is not unreasonably high.  "A sentence imposed well below the statutory maximum penalty is" also "an indicator of a reasonable sentence." *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) (citing *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008)).

"A district court abuses its discretion" and imposes a substantively unreasonable sentence "when it (1) fails to afford

---

[5] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed education or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citing *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)).

"To arrive at an appropriate sentence, the district court must consider all of the applicable § 3553(a) factors." *Rosales-Bruno*, 789 F.3d at 1254 (citing *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009)). "That does not mean, however, that it must give all of the § 3553(a) factors equal weight." *Id.* The district court may attach great weight to one § 3553(a) factor over others, and the weight it assigns to any one factor is within its sound discretion. *Id.*

In general, a district court need not state on the record that it has explicitly considered each of the § 3553(a) factors, nor discuss those factors. *Oudomsine*, 57 F.4th at 1265. Rather, it is enough that the record reflects that the district court considered the § 3553(a) factors and the parties' arguments. *Id.* "A district court's failure to discuss mitigating evidence does not indicate that the court erroneously ignored or failed to consider the evidence." *United States v. Butler*, 39 F.4th 1349, 1356 (11th Cir. 2022) (citation modified). Rather, an acknowledgment by the district court that it considered the § 3553(a) factors is sufficient. *Id.*

Ultimately, we will vacate a defendant's sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of

judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted).

## C.    Analysis

Here, Caballero's 210-month, below-advisory-guidelines sentence is not substantively unreasonable. To begin, Caballero's argument that the district court overlooked his mitigating evidence at sentencing is incorrect. The district court, before pronouncing Caballero's sentence, stated that it was imposing a sentence below the advisory guidelines range "because of [Caballero's] age." It also made clear that it considered Caballero's "age, [] history and [] characteristics and [] impoverished upbringing."

The fact that the district court did not explicitly explain its consideration of Caballero's physical health does not indicate that it ignored this evidence. *Butler*, 39 F.4th at 1356. The court stated that it decided on the imposed sentence "pursuant to . . . [§] 3553," which was sufficient. *Id.* Caballero suggests that the court should have given more weight to his mitigating evidence, but the court was not required to do so, and it did not abuse its discretion in giving other factors greater weight. *United States v. Olson*, 127 F.4th 1266, 1276 (11th Cir. 2025).

The district court also did not err as to any sentencing disparities because Caballero and his codefendants were not similarly situated. *See United States v. Mullings*, 166 F.4th 939, 957 (11th Cir. 2026) (explaining that "the district court need not use any comparator that has a significant distinction in his circumstances"

(citation modified)).  Caballero was not only the captain of this vessel, but he also had a prior 2017 conviction in Spain for smuggling $76 million worth of cocaine.  His codefendants received reductions for pleading guilty and acceptance of responsibility, while Caballero did not.  Based on these facts, the district court acted well within its discretion when it imposed a higher sentence on Caballero than his codefendants.

In addition, Caballero ignores that his 210-month sentence was actually below the advisory guideline range of 235 to 293 months, another indication the sentence was not unreasonable. *See Hunt,* 526 F.3d at 746.  A 210-month imprisonment sentence does not "'lie[] outside the range of reasonable sentences dictated by the facts of the case,'" and therefore we must affirm. *Irey*, 612 F.3d at 1190.

## VI.  CONCLUSION

For the above reasons, we affirm Caballero's convictions under the MDLEA and his 210-month imprisonment sentence.

**AFFIRMED.**